CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 2 5 2014

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NOSILLA A. GADOUAS, | Civil Action No. 7:13CV00219 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | By: Hon. Glen E. Conrad |
| | Chief United States District Judge |
| Defendant. | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Nosilla A. Gadouas, was born on December 29, 1983, and eventually completed her high school education. Plaintiff also attended college for a short time. Ms. Gadouas has worked as a retail sales person, stocker, cashier, and food server. She last worked on a regular and sustained basis in 2006. On February 12, 2010, plaintiff filed an application for supplemental security income benefits. Ms. Gadouas alleged that she became disabled for all forms of substantial gainful employment on April 1, 2006, due to a personality disorder, inability to deal with stress, inability to work around other people, bipolar disorder, manic depressive disorder, posttraumatic

stress disorder, and substance abuse. She now maintains that she has remained disabled to the present time.

Ms. Gadouas' claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated March 26, 2012, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Ms. Gadouas suffers from severe impairments including orthostatic hypotension, obesity, schizoaffective disorder, major depressive disorder, borderline personality disorder, anxiety related disorder, and substance dependence/abuse. (TR 18). Because of these impairments, the Law Judge ruled that Ms. Gadouas is disabled for all of her past relevant work roles. (TR 25). However, the Law Judge held that plaintiff retains sufficient functional capacity for a limited range of medium work activities. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.967(c) except the claimant can never climb ladders, ropes, or scaffolds, and the claimant must avoid all hazards. The claimant is limited to simple, easy-to-learn, unskilled work. She can have no interaction with the public and no more than occasionally interaction with coworkers and supervisors.

(TR 20). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Ms. Gadouas retains the capacity to perform several work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that plaintiff is not disabled, and that she is not entitled to supplemental security benefits. See generally 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social

Security Administration's Appeals Council. Having exhausted all available administrative remedies, plaintiff has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. The court believes that the medical record supports the Law Judge's finding that Ms. Gadouas retains the physical ability to perform a wide variety of work roles. However, the record also confirms that plaintiff's primary impairments include a variety of nonexertional conditions, including schizoaffective disorder, depression, personality disorders, and anxiety. Ms. Gadouas has a history of substance dependence and abuse. During the earlier administrative proceedings in plaintiff's case, the state disability agency commissioned a consultative psychological study which was performed by Dr. Marvin A. Gardner, Jr., on April 14, 2010. Dr. Gardner ultimately concluded that plaintiff possesses a GAF

of 48[1] and that her "prognosis is poor due to a combination of substance dependence and [characterological] symptoms." (TR 304). However, the Law Judge explicitly accorded little weight to Dr. Gardner's report, "because he only examined the claimant once, and his opinion is based on her subjective complaints." (TR 24). Instead, the Law Judge accorded greater weight to a report from a nonexamining state agency psychologist, Dr. Julie Jennings. (TR 24-25). The court is unable to conclude that the reasons assigned by the Law Judge for discounting Dr. Gardner's report are supported by substantial evidence. Moreover, the court finds that under both Dr. Gardner's assessment, and that provided by Dr. Jennings, Ms. Gadouas experiences moderate limitations in attention and concentration that were not included in the Law Judge's hypothetical question to the vocational expert. Thus, the court concludes that the Law Judge's reliance on the vocational expert's testimony in finding residual functional capacity for specific, alternate work roles, is not supported by substantial evidence. The court concludes that there is "good cause" for remand of this case to the Commissioner for further development and consideration.

In assessing the probative value of Dr. Gardner's report, the Administrative Law Judge stated as follows:

> Dr. Gardner opined that the claimant is able to perform simple and repetitive tasks and maintain regular attendance. He opined that the claimant would be unlikely to decompensate by working a 40-hour workweek, but she is likely to leave her job or be fired after a short period of time. (Exhibit 3F at 7). His opinion is given little weight because he only examined the claimant once, and his opinion is based on her subjective complaints. There is reason to believe these subjective complaints are not credible because there is no record of similar complaints elsewhere in the claimant's medical evidence of record, including her mental health treatment records. Also, the claimant was not truthful regarding her drug use. Still further, claimant's current

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

4

mental health provider has given the claimant a current GAF score of 55 (moderate impairment) with a GAF as high as 65 (mild impairment) in the last year (Exhibit 12F/7). This is from a treating source and contradicts the lower GAF score opined by Dr. Gardner.

(TR 24).

The court believes that the Law Judge's assessment of the consultative psychological study is deficient in several respects. As reflected by the Law Judge's opinion, the only treating mental health providers in Ms. Gadouas' case have been a physician's assistant and a professional counselor. Under 20 C.F.R. § 404.913, a psychologist is deemed to be an "acceptable medical source" for purposes of establishing the existence of an impairment, while counselors and assistants are not classified as acceptable sources. Moreover, contrary to the Law Judge's comments, Dr. Gardner's report indicates that he considered much more than plaintiff's subjective complaints in making his assessment. Dr. Gardner's report reveals that he was provided various mental health records for review prior to conducting his examination. (TR 297). Furthermore, the report confirms that the psychologist conducted a full diagnostic interview and mental status examination. For example, in terms of plaintiff's cognitive functioning, the report states as follows:

> Immediate Recall: The claimant's immediate recall is mildly impaired. She was able to recall up to six digits forward with two trials and three digits backward.
>
> Recent Memory: The claimant's recent memory is within normal limits. She was able to recall three words given to her four minutes later.
>
> Long-Term Memory: The claimant's long-term memory is within normal limits.
>
> General Information: The claimant's fund of general information is within normal limits. She was able to answer correctly five out of six content questions and give the names of five large cities and five famous people.

5

> Computational Skills: The claimant's computational skills are within normal limits. She was able to answer correctly seven out of eight digit problems and four out of five word problems.
>
> Concentration: The claimant's concentration is moderately impaired. She was able to count by twos up to 20 and backward by 20 from twos at a normal pace. She was able to complete serial threes at a normal pace with one error. In her attempt to complete serial sevens she did so in two minutes with one error.
>
> Insight: The claimant's insight is within normal limits.
>
> Judgment: The claimant's judgment by testing was within normal limits. In daily reality, her judgment is quite poor.
>
> Abstract Thinking: The claimant's ability to think abstractly is within normal limits. She was able to give abstract meanings to two of three proverbs and to complete five out of five similes.

(TR 302). The Administrative Law Judge seems to suggest that Dr. Gardner was in someway misled by false answers from Ms. Gadouas during the clinical interview. There is no evidence to support such an proposition. As a practical matter, in assessing patients with nonexertional impairments, psychiatrists and psychologists consider and interpret information related to them by the patients. Such mental health specialists are trained to separate the wheat from the chaff. There is no reason to believe that Dr. Gardner was not qualified to consider all of the symptoms related by Ms. Gadouas, and to put these complaints in proper perspective in reaching his overall diagnoses and impressions. If there was reason to believe that Dr. Gardner was not capable of conducting the consultative psychological examination, the state agency would not have commissioned him to do so.

Most importantly, the court rejects the notion that Dr. Gardner's report should be discounted "because he only examined the claimant once." The Law Judge's comments in this regard reflect

poorly on the consultative examination program established by the Commissioner. See 20 C.F.R. § 404.917 et seq. Under 20 C.F.R. § 404.919a(b), it is provided as follows:

> We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim.

In a multitude of social security cases over the years, this court has cited consultative studies as providing substantial evidence to support the Commissioner's final decision. For example, just in the last several weeks, the court has affirmed final decisions of the Commissioner, based on Administrative Law Judge reliance on consultative studies, in which the examiner has seen the claimant on only one occasion. See, e.g., Huff v. Colvin, No. 7:13-cv-00325, ----- WL ----- (W.D. Va. March 21, 2014)(However, the court believes that the Administrative Law Judge reasonably relied on the consultative psychological report in concluding that Mr. Huff's depression and intellectual limitations are not so severe as to constitute or contribute to an overall disability.); Rhoades v. Colvin, No. 3:13-cv-00035, 2014 WL 1017626 (W.D. Va. March 17, 2014)(It appears to the court that the Administrative Law Judge reasonably relied on the findings produced by [the consultative physician] after his physical examination.); Doss v. Colvin, No. 7:13-cv-00241, 2014 WL 823998 (W.D. Va. March 3, 2014)(The court believes that the Law Judge's reliance on [the consultative] report, and the Law Judge's assessment of plaintiff's physical limitations for purposes of the hypothetical question, are both reasonable and consistent with the evidence of record.); Blackiston v. Colvin, 7:13-cv-00252, 2014 WL 794567 (W.D. Va. February 27, 2014)(The court believes that the Law Judge's reliance on [the consultative] report, and the Law Judge's assessment of plaintiff's physical limitations for purposes of the hypothetical question, are both reasonable and consistent with the evidence of record.). In each of these cases, the consultative medical source saw

the claimant on only a single occasion. In the instant case, the court concludes that it makes little sense for the Law Judge to discount the consultative psychological study because the psychologist "only examined the claimant once." (TR 24).

In any event, regardless of whether greater weight is given to Dr. Gardner's psychological study, or to the report of the nonexamining state agency psychologist, Dr. Jennings, the court believes that both reports document work-related limitations that were not included in the hypothetical question put to the vocational expert. At the administrative hearing, the Administrative Law Judge posed the following hypothetical question to the vocational expert:

> I want you to assume a hypothetical individual the same age, education, past work experience as the claimant who has the following residual functional capacity. This individual is limited to simple, easy to learn, repetitive unskilled work, she should have no interaction with the public and only occasional interaction with coworkers and supervisors.

(TR 54). In response, the vocational expert identified several jobs which the claimant could be expected to perform. (TR 55). The Law Judge relied on such testimony in determining that Ms. Gadouas retains sufficient functional capacity for several specific light work roles existing in the national economy. (TR 26). However, the record reveals that in addition to the limitation to simple, unskilled work not involving interaction with others, Dr. Gardner and Dr. Jennings both determined that Ms. Gadouas experiences moderate work-related impairment of concentration, persistence, and pace. As noted above, Dr. Gardner based his assessment on his clinical observations. (TR 302-03). Dr. Jennings, upon whose opinion the Law Judge gave greater weight, also noted moderate limitation in plaintiff's capacity to maintain attention and concentration, and in her ability to work without distraction. (TR 78). In passing, it would seem that the ability to stay on task would be critical to the performance of the repetitive work roles envisioned by the vocational expert.

In Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions <u>which fairly set out all of claimant's impairments</u>. (emphasis added)(citations omitted).

In the instant case, the court is simply unable to conclude that the opinions offered by the vocational expert, and which were adopted by the Administrative Law Judge, were based on all the work-related limitations documented in the assessments of the psychologists. There is no indication that the vocational expert was asked to consider moderate impairments in plaintiff's concentration, attention span, and pace. Yet, in response to the hypothetical question which was posed, the vocational expert identified alternate work roles which are "production oriented occupations." (TR 55). In such circumstances, the court believes that there is "good cause" for remand of the case to the Commissioner so that proper and comprehensive hypothetical questions can be put to a qualified vocational expert.

On appeal to this court, plaintiff contends that the existing record establishes her disability for all forms of substantial gainful employment. Ms. Gadouas maintains that Dr. Gardner's psychological report indicates that she is unable to tolerate exposure to other persons, and that some personal interaction is required in all of the jobs identified by the vocational expert. While Dr. Gardner's report does raise additional questions for the vocational expert, the court believes that his psychological analysis does not necessarily support the proposition that plaintiff is disabled for all forms of work. Ultimately, Dr. Gardner opined that plaintiff suffers from a moderate impairment,

9

that she is limited to simple, unskilled work roles, and that she is unlikely to decompensate in a forty hour work week job. Moreover, while the court finds fault with much of the Administrative Law Judge's opinion, the court believes that there is some merit to the Law Judge's observation that many of plaintiff's symptoms could be relieved with treatment if she followed her medical providers' recommendations.[2] (TR 23). As for plaintiff's difficulty in tolerating interaction with other people in a work environment, the court questions whether such a circumstance fits the definition of a disabling impairment as prescribed by and pursuant to 42 U.S.C. § 1382c(a). All in all, the court believes that the better course is to remand this case to the Commissioner for further administrative proceedings, so that the deficiencies, inconsistencies, and unanswered questions in the record may be properly addressed.

For the reasons stated, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g). An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 25th day of March, 2014.

_____
Chief United States District Judge

---

[2] It should be pointed out, however, that the Law Judge did not deny entitlement based on a finding of failure to follow prescribed treatment. See 20 C.F.R. § 416.930.